**2020-1565, -1567**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————

CYWEE GROUP LTD.,
*Appellant*

v.

GOOGLE LLC, SAMSUNG ELECTRONICS CO., LTD., LG ELECTRONICS
INC., HUAWEI DEVICE USA, INC., HUAWEI DEVICE CO., LTD., HUAWEI
TECHNOLOGIES CO., LTD., HUAWEI DEVICE (DONGGUAN) CO., LTD.,
HUAWEI INVESTMENT & HOLDING CO., LTD., HUAWEI TECH.
INVESTMENT CO., LTD., HUAWEI DEVICE (HONG KONG) CO., LTD.,
*Appellees*

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office,
*Intervenor*

.

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Nos. IPR2018-01257 and IPR2018-01258

———————

# CORRECTED MOTION TO STAY APPEAL PENDING *ARTHREX II*, OR
# IN THE ALTERNATIVE, TO EXTEND TIME TO FILE APPELLEE
# BRIEF

———————

Appellee Google LLC ("Google") moves under Federal Circuit Rule 27 and

Federal Rule of Appellate Procedure 27 to stay this appeal pending this Court's

resolution of *Arthrex, Inc. v. Smith & Nephew, Inc.*, 18-2140 (before Moore, C.J.,

Reyna, Chen, JJ.) ("*Arthrex II*"), which was argued and submitted on March 30,

2022.

In the alternative, Google moves under Federal Rule of Appellate Procedure 26(b) and Federal Circuit Rule 26(b) for a 60-day extension of time to file the appellees' brief. The appellees' brief is currently due May 31, 2022, and if this motion is granted, the deadline will be August 1, 2022. The total number of days of extension previously granted to any appellee, including Google, is zero.

Counsel for Google has discussed this motion with the other parties. Counsel for Intervenor, Director of the U.S. Patent and Trademark Office ("PTO"), has stated that it does not oppose the stay or the extension. Counsel for Appellant ("CyWee") has stated that it opposes all requested relief but did not specifically indicate whether it will object or file a response.

## BACKGROUND

This same appeal returns to this Court following an *Arthrex* remand. In *CyWee Group Ltd. v. Google LLC*, 847 Fed. App'x 910 (Fed. Cir. Mar. 16, 2021), this Court affirmed the Patent Trial and Appeal Board's final written decisions finding all challenged claims to be unpatentable. (ECF #96). This Court's mandate issued on June 10, 2021. (ECF #103). Eleven days later, the Supreme Court issued its decision in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021). In response to the Supreme Court's *Arthrex* decision, CyWee moved this Court to recall its mandate and to remand the case to the Board so that CyWee could seek Director

rehearing of the Board's final written decisions. (ECF #104). This Court granted CyWee's request to the extent that the Court recalled its mandate, reinstated the appeal, and remanded the case to the Board "for the limited purpose of allowing CyWee the opportunity to request Director rehearing of the final written decisions." (ECF #109). On remand, CyWee requested Director rehearing. CyWee's rehearing requests were denied on January 7, 2022 by the temporary head of the agency, Andrew Hirshfeld, Commissioner for Patents.[1]

Having obtained both the remand it requested and a decision on its rehearing requests by the temporary head of the agency, CyWee now brings these appeals before this Court a second time. After filing an amended notice of appeal (ECF #115), CyWee filed its opening brief on April 21, 2022 (EFS #124). Unlike in its initial appeal, CyWee raises no patentability issues in this appeal. Instead, CyWee now focuses on the assertion that Mr. Hirshfeld was not a "presidentially appointed, Senate-confirmed principal officer." (EFS #124 at 12). Cascading from this assertion are "multiple constitutional and statutory" violations that CyWee alleges under the Appointments Clause, Federal Vacancies Reform Act, Separation of Powers Clause, and Due Process Clause. (*Id.* at 10, 12–14).

CyWee does not mention, however, that its opening brief mirrors—sometimes

---

[1] The current Director of the PTO, Katherine Vidal, was confirmed by the Senate on April 5, 2022. *https://www.congress.gov/nomination/117th-congress/1326.*

word-for-word—a brief filed by a different appellant in a case pending before this Court: *Arthrex, Inc. v. Smith & Nephew, Inc.*, Fed. Cir. No. 18-2140 ("*Arthrex II*") (a copy of appellant's brief in *Arthrex II* is attached hereto as Exhibit A). The "multiple constitutional and statutory" violations alleged by CyWee are the same as those alleged in the brief filed by the patentee-appellant in *Arthrex II*. The alleged violations of the Appointments Clause, Federal Vacancies Reform Act, and Separation of Powers Clause mirror those in *Arthrex II*. *Compare* EFS #124 (CyWee Br. 12–14), *with* Exhibit A (Arthrex Br. 1–2).

The *Arthrex II* appeal is in an advanced state. Oral argument in *Arthrex II* was held on March 30, 2022. The case was submitted to a panel consisting of Chief Judge Moore, Judge Reyna, and Judge Chen, and is currently awaiting a decision.

By contrast, in the present appeal, the parties' briefing is scheduled to be completed on June 21, 2022. (ECF #119). Calendaring of this appeal for oral argument is not expected until several months after briefing has been completed.

## ARGUMENT

## I.    This Appeal Should Be Stayed Pending this Court's Decision in *Arthrex II*

The appellees, the Intervenor, and this Court should not be required to engage in duplicative briefing and consideration of CyWee's arguments, which overlap substantially with the issues presented in *Arthrex II*. Staying this appeal pending this Court's resolution of *Arthrex II* would allow the parties here to address the

impact of that decision comprehensively during merits briefing (in appellees' brief, intervenor's brief, and appellant's reply brief), rather than in piecemeal fashion via supplemental briefing or in Rule 28(j) letters filed after the decision issues.

Nor should a stay be denied based on CyWee's additional "due process" challenge. (EFS #124 at 13–14 (CyWee alleging due process violations due to "no substantive involvement of the principal officer designated by statute")). Like the other three "constitutional and statutory" violations already briefed in *Arthrex II*, CyWee's new purported "due process" challenge also rests entirely on the underlying assertion that Mr. Hirshfeld was not a "presidentially appointed, Senate-confirmed principal officer." (*Id*. at 12). CyWee's "due process" challenge, as well as CyWee's "lack of timeliness" arguments concerning the institution and final written decisions, rely on the same assertion that Mr. Hirshfeld did not properly serve as a temporary principal officer. (*Id*. at 16 (CyWee arguing that "the institution decision was untimely because it was rendered by inferior officers, not the Director as principal officer," and "the final written decisions were untimely for the same reasons")). Briefing of these issues will be more productive and focused once this Court has decided *Arthrex II*.

Intervenor, which is a party in *Arthrex II*, consents to a stay of CyWee's appeal.

For these reasons, the Court should stay this appeal pending this Court's

resolution of *Arthrex II*, including any rehearing petition.

## II.    Alternatively, An Extension of Appellees' Brief is Requested

If the Court does not stay this appeal, Google respectfully requests a 60-day extension of time to file the appellees' brief. The total number of days of extension previously granted to any appellee, including Google, is zero. The appellees' brief is currently due May 31, 2022, and if this motion is granted, the deadline will be August 1, 2022. In support of this motion, Google states as follows:

1.    Counsel for Google has discussed this motion with counsel for CyWee and counsel for the Intervenor. Counsel for Intervenor has stated that it does not oppose the stay or the extension. Counsel for CyWee has stated that it opposes the requested relief but did not specifically indicate whether it will object or file a response.

2.    Andrew S. Baluch is counsel for Google and is primarily responsible for its brief in this Court. As detailed in Mr. Baluch's attached declaration, his other commitments limit his ability to devote the necessary time to the preparation of the appellees' brief.

3.    No extensions of time have previously been granted to any appellee, including Google.

For these reasons, Appellee Google respectfully requests an extension of time

to and including August 1, 2022 to file the appellees' brief in this appeal.


Date:  May 3, 2022                          Respectfully submitted,

                                            /s/ Andrew S. Baluch
                                            Andrew S. Baluch
                                            SMITH BALUCH LLP
                                            700 Pennsylvania Ave. SE
                                            Second Floor
                                            Washington, DC 20003
                                            202-880-2397

                                            *Counsel for Google LLC*

# DECLARATION OF ANDREW S. BALUCH

I, ANDREW S. BALUCH, declare:

1.      I am counsel for Appellee Google LLC in *CyWee Group Ltd. v. Google LLC*, No. 20-1565, pending in this Court.  I am primarily responsible for the preparation and submission of Appellee's principal brief in this appeal.

2.      I make this Declaration in support of Appellee's motion for a 60-day extension of time to file its principal brief, from May 31, 2022 to August 1, 2022. Good cause for this extension exists for the following reasons.

3.      Prior commitments have limited and will continue to limit my ability to devote the necessary time to preparation of Appellee's principal brief.  Among other things, I am lead counsel in *Twitter, Inc. v. B.E. Technology, L.L.C.*, IPR2021-00484 and IPR2021-00485, in which oral argument is scheduled for June 3, 2022.  I am lead counsel in *Google LLC v. MindbaseHQ LLC*, IPR2021-01251 and IPR2021-01252, in which I will be taking an expert deposition in connection with, and will be preparing to submit, a Reply to Patent Owner's Response on June 27, 2022.  I am also actively involved in confidential settlement negotiations on behalf of a client in another matter, which includes a potential license agreement and a patent infringement analysis involving a design-around product.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 3, 2022.

/s/  Andrew S. Baluch

## <u>CERTIFICATE OF INTEREST</u>
## (GOOGLE LLC)

Pursuant to Federal Circuit Rule 47.4, counsel for Appellee Google LLC certifies the following:

1.      Full Name of Party Represented by me:

Google LLC

2.      Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me:

None other than Google LLC

3.      Parent corporations and publicly held companies that own 10% or more of stock in the party:

XXVI Holdings Inc.; Alphabet Inc.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case):

None

5.      The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

- *CyWee Group Ltd. v. ZTE Corporation et al*, 3-17-cv-02130 (S.D. Cal. Oct. 17, 2017);
- *CyWee Group Ltd. v. HTC Corporation et al*., 2-17-cv-00932 (W.D. Wa. Jun. 16, 2017);
- *CyWee Group Ltd. v. Huawei Technologies Co., Inc. et al*., 2-17-cv-00495 (E.D. Tex. Jun. 09, 2017);
- *CyWee Group Ltd. v. LG Electronics, Inc. et al*., 3-17-cv-01102 (S.D. Cal. May. 31, 2017);

- *CyWee Group Ltd. v. Samsung Electronics Co. Ltd. et al.*, 2-17-cv-00140 (E.D. Tex. Feb. 17, 2017);
- *CyWee Group Ltd. v. Apple Inc.*, 4-14-cv-01853 (N.D. Cal. Apr. 22, 2014);
- *LG Electronics, Inc. et al v. CyWee Group Ltd.*, IPR2019-01203 (PTAB Jun. 15, 2019);
- *Huawei Device USA, Inc. et al v. CyWee Group Ltd.*, IPR2019-00562 (PTAB Jan. 11, 2019);
- *ZTE USA, Inc. et al v. CyWee Group Ltd.*, IPR2019-00526 (PTAB Jan. 10, 2019);
- *LG Electronics, Inc. et al v. CyWee Group Ltd.*, IPR2019-00559 (PTAB Jan. 10, 2019);
- *Samsung Electronics Co., Ltd. et al v. CyWee Group Ltd.*, IPR2019-00535 (PTAB Jan. 08, 2019);
- *ZTE (USA) Inc. et al v. CyWee Group Ltd.*, IPR2019-00143 (PTAB Oct. 31, 2018);
- *Huawei Device USA, Inc. et al v. CyWee Group Ltd.*, IPR2019-00563 (PTAB Jan. 11, 2019);
- *ZTE USA, Inc. et al v. CyWee Group Ltd.*, IPR2019-00525 (PTAB Jan. 10, 2019);
- *LG Electronics, Inc. et al v. CyWee Group Ltd.*, IPR2019-00560 (PTAB Jan. 10, 2019); and
- *Samsung Electronics Co., Ltd. et al v. CyWee Group Ltd.*, IPR2019-00534 (PTAB Jan. 08, 2019).

6.     Organizational Victims and Bankruptcy Cases.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

        None

                                                    /s/ Andrew S. Baluch
                                                    SMITH BALUCH LLP

## **<ins>CERTIFICATE OF SERVICE</ins>**

I hereby certify that on May 3, 2022, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Federal Circuit using the Appellate CM/ECF system.  Accordingly, I certify that all participants in this case that have appeared as CM/ECF users shall be served by the Appellate CM/ECF system.

/s/ Andrew S. Baluch
SMITH BALUCH LLP

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION</u>

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2). According to the word-processing system used to prepare this document, the motion contains 1,207 words.

/s/ Andrew S. Baluch
SMITH BALUCH LLP

# ADDENDUM

Patent Owner Arthrex, Inc.'s Corrected Supplemental Brief,
   *Arthrex, Inc. v. Smith & Nephew, Inc.*, Fed. Cir. No. 18-2140
   (filed Jan. 12, 2022) ………………...……………………..Exhibit A

# EXHIBIT A

2018-2140

# United States Court of Appeals

## for the Federal Circuit

**Arthrex, Inc.,**

*Appellant*

v.

**Smith & Nephew, Inc. and ArthroCare Corp.,**

*Appellees*

**United States,**

*Intervenor*

Appeal from the U.S. Patent & Trademark Office,
Patent Trial and Appeal Board, *Inter Partes* Review No. 2017-00275

## PATENT OWNER ARTHREX, INC.'S CORRECTED SUPPLEMENTAL BRIEF

Jeffrey A. Lamken
Robert K. Kry
MOLOLAMKEN LLP
600 New Hampshire Ave. NW
Washington, D.C.
Telephone: (202) 556-2010
Facsimile: (202) 556-2001
jlamken@molomanken.com
rkry@mololamken.com

Jordan A. Rice
MOLOLAMKEN LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 450-6709
jrice@mololamken.com

Anthony P. Cho
David Gaskey
Jessica Fleetham
David L. Atallah
CARLSON, GASKEY & OLDS, P.C.
400 West Maple Road, Suite 350
Birmingham, MI 48009
Telephone: (248) 988-8360
Facsimile: (248) 988-8363
acho@cgolaw.com
dgaskey@cgloaw.com
jfleetham@cgolaw.com
datallah@cgolaw.com

*Attorneys for Appellant Arthrex, Inc.*

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 18-2140 |
| **Short Case Caption** | Arthrex, Inc. v. Smith & Nephew, Inc. |
| **Filing Party/Entity** | Arthrex, Inc. |

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/12/2022

Signature: /Anthony P. Cho/

Name: Anthony P. Cho

FORM 9. Certificate of Interest

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Arthrex, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable            ☐   Additional pages attached

| | | |
|---|---|---|
| Timothy J. Murphy | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☑   None/Not Applicable            ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable            ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

BACKGROUND ...................................................................................2

   I.   Arthrex's '907 Patent ...................................................................2

   II.   The Board's Decision...................................................................4

   III.  Arthrex's Appeal to This Court ..................................................5

   IV.  The Supreme Court's Decision....................................................6

   V.   Proceedings on Remand...............................................................7

   VI.  Further Proceedings on Appeal...................................................10

ARGUMENT .......................................................................................10

   I.   Commissioner Hirshfeld Lacked Authority To Review Arthrex's
       Petition Under the Appointments Clause.....................................11

       A.  Commissioner Hirshfeld Improperly Exercised the Authority
           of a Principal Officer.........................................................11

       B.  The PTO's Delegation of Authority Does Not Avoid the
           Appointments Clause Violation .........................................14

   II.   Commissioner Hirshfeld Lacked Authority To Review Arthrex's
        Petition Under the Federal Vacancies Reform Act.....................18

       A.  Commissioner Hirshfeld Was Not Appointed Pursuant to the
           Federal Vacancies Reform Act ..........................................18

       B.  Commissioner Hirshfeld Purported To Perform Functions and
           Duties of the Director .........................................................20

III.  Commissioner Hirshfeld's Exercise of the Director's Authority
      Violates the Separation of Powers ............................................................23

CONCLUSION ......................................................................................................27

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003) ..............................................................9

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
    941 F.3d 1320 (Fed. Cir. 2019) ........................................................5, 6

*Bullock v. U.S. Bureau of Land Mgmt.*,
    489 F. Supp. 3d 1112 (D. Mont. Sept. 25, 2020)................................19

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021)............................................................ 24, 25, 26

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
    543 U.S. 157 (2004)............................................................................17

*Edmond v. United States*,
    520 U.S. 651 (1997)............................................................................12

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010)............................................................................24

*In re Boloro Glob. Ltd.*,
    No. 19-2349, Dkt. 27 (Fed. Cir. filed Mar. 20, 2020) ........................25

*In re Sealed Case*,
    829 F.2d 50 (D.C. Cir. 1987)..............................................................14

*L.M.-M. v. Cuccinelli*,
    442 F. Supp. 3d 1 (D.D.C. 2020)................................................. 19, 21

*NLRB v. SW Gen.*,
    137 S. Ct. 929 (2017)................................................................... 16, 19

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    140 S. Ct. 2183 (2020)............................................................ 24, 25, 26

*United States v. Arthrex*,
    141 S. Ct. 1970 (2021)............................ 6, 7, 12, 13, 14, 15, 17, 22, 25

**Cases (cont.)**                                                        **Page(s)**

*United States v. Eaton,*
   169 U.S. 331 (1898) ............................................................... 15, 16, 17

*United States v. Smith,*
   962 F.3d 755 (4th Cir. 2020) ..............................................................17


**Constitution and Statutes**                                           **Page(s)**

U.S. Const. art. II .................................................................. 5, 11, 23

5 U.S.C. § 3345(a) ................................................................... 18, 20

5 U.S.C. § 3347(a) ............................................................................18

5 U.S.C. § 3348(a) ................................................................... 19, 21, 23

5 U.S.C. § 3348(d) ....................................................................... 19, 23

35 U.S.C. § 2(b) ...............................................................................25

35 U.S.C. § 3(a) ................................................................ 6, 22, 23, 24, 25

35 U.S.C. § 3(b) ................................................................ 8, 11, 13, 20, 23

35 U.S.C. § 6(a) .................................................................................6

35 U.S.C. § 6(c) .......................................................................... 6, 7, 22

35 U.S.C. § 120 ..................................................................................4

35 U.S.C. § 311(b) ..............................................................................5

**Other Authorities**                                                      **Page(s)**

85 Fed. Reg. 13,186 (Mar. 6, 2020).........................................................14

*Designating an Acting Attorney General*,
   2018 WL 6131923 (O.L.C. Nov. 14, 2018).......................................17

*The Federalist No. 77* (Hamilton)............................................................12

Jody Freeman & Sharon Jacobs, *Structural Deregulation*,
   135 Harv. L. Rev. 585 (2021) ..............................................................20

Ian Lopez, *Hirshfeld Takes Up PTO Chief Duties as Biden Enters White House*, Bloomberg Law, Jan. 20, 2021 ..................................................7

Nina A. Mendelson, *L.M.-M. v. Cuccinelli and the Illegality of Delegating Around Vacant Senate-Confirmed Offices*,
   Yale J. on Reg.: Notice & Comment (Mar. 5, 2020).........................20

Nina A. Mendelson, *The Permissibility of Acting Officials: May the President Work Around Senate Confirmation?*,
   72 Admin. L. Rev. 533 (2020).............................................................20

Teresa Stanek Rea, Deputy Director,  U.S. Patent & Trademark Off., *Delegation To Perform the Non-Exclusive Functions and Duties of the Under Secretary and Deputy Under Secretary of Commerce for Intellectual Property and Director and Deputy Director of the United States Patent Office* (Nov. 15, 2013) ........................................8

U.S. Dep't of Commerce, Department Organizational Order 10-14 (Sept. 28, 2012).....................................................................................8

U.S. Patent & Trademark Off., Agency Organization Order 45-1 (June 24, 2002).......................................................................................8

U.S. Patent & Trademark Off., *Notice of Delegation to Commissioner for Patents and Notice of Delegation to Commissioner for Trademarks* (Oct. 30, 2014) ........................................................................ 8, 17, 21

**Other Authorities (cont.)**                                        **Page(s)**

U.S. Patent & Trademark Off., *USPTO Implementation of an Interim
   Director Review Process Following Arthrex*
   (June 29, 2021)......................................................................................25

Appellant Arthrex, Inc., respectfully submits this supplemental brief pursuant to the Court's order of December 2, 2021.  ECF No. 156.

## **<u>INTRODUCTION</u>**

This case returns to the Court following a trip to the Supreme Court and a remand to the Patent and Trademark Office.  This Court previously held that the Patent Trial and Appeal Board lacked authority to invalidate Arthrex's patent claims because the Board's members exercised the authority of principal officers without having been appointed by the President and confirmed by the Senate, as the Appointments Clause requires.  The Supreme Court agreed.  To remedy the problem, the Court ruled that the PTO Director—a properly appointed principal officer—must have unilateral authority to review Board decisions.  This Court then remanded so Arthrex could seek that principal-officer review.

On remand, Arthrex never got the remedy the Supreme Court ordered.  No presidentially appointed, Senate-confirmed principal officer decided Arthrex's petition for review of the Board's decision.  Instead, the petition was denied by Commissioner for Patents Drew Hirshfeld—an agency official appointed only as an *inferior* officer by the Secretary of Commerce.  That order violates multiple constitutional and statutory constraints.

First, the decision violates the Appointments Clause.  The Supreme Court held that only presidentially appointed *principal* officers may issue final decisions that

1

represent the agency's final word. Yet the PTO repeated the exact same error that led to the Supreme Court's decision by allowing someone appointed as a mere *inferior* officer to conclusively resolve Arthrex's case.

Second, the decision violates the Federal Vacancies Reform Act. That statute permits an acting officer to exercise the functions and duties of a principal office temporarily, but only if the acting officer was the principal officer's deputy or was personally selected by the President. Commissioner Hirshfeld was neither.

Finally, the decision violates the separation of powers. The President must be able to remove the heads of executive agencies at will so he can supervise and be accountable for their exercise of executive power. Commissioner Hirshfeld has tenure protections that deny the President that authority.

For those reasons, as well as the grounds stated in Arthrex's principal briefs (ECF Nos. 18 & 40), the Court should reverse the Board's decision on the merits and vacate Commissioner Hirshfeld's order denying review.

## BACKGROUND

### I.    ARTHREX'S '907 PATENT

This case concerns Arthrex's U.S. Patent No. 9,179,907, which covers a novel surgical device for reattaching soft tissue to bone. Appx578 (1:43-48). Early suture anchors required surgeons to tie knots to secure tissue—a tedious and cumbersome process. Appx578 (1:32-39). The '907 patent discloses a device for securing tissue

without knots, reducing surgery times and attendant complications.  Appx578 (1:36-48), Appx581 (8:1-12), Appx582 (9:62-10:5).

The '907 patent stems from an application filed in 2001, No. 09/886,280.  Appx1220-1266.  That '280 application described an embodiment of the invention that uses a flexible eyelet (a "suture loop") to position the suture where it can be secured without tying knots.  Appx1224, Appx1226, Appx1232, Appx1238.

Following that application, the inventors filed a series of continuation and continuation-in-part applications refining their design.  Appx1267-1377.  Each application incorporated by reference the original '280 application and claimed priority based on that application. *See, e.g.*, Appx1268.  Each application explained the same basic object of the invention: to allow surgeons to attach tissue to bone without tying knots by threading suture through an eyelet. *See, e.g.*, Appx1268-1270, Appx1294 (identifying eyelet as an "improved method" over knotted suture anchors).  The applications also added improvements to the inventors' original design, such as the use of a rigid rather than a flexible eyelet to facilitate sliding of the suture through the loop. *See, e.g.*, Appx1268-1269.

In 2014, Arthrex filed another continuation application that matured into the '907 patent.  Appx595-642.  That application, like the preceding ones, claimed priority to the '280 application.  Appx595.  Unlike the prior applications, it disclosed the original flexible-eyelet embodiment explicitly rather than incorporating it by

3

reference.  Appx596-605.  It also disclosed the improved rigid-eyelet embodiment.  Appx604, Appx612, Appx615, Appx631.  Rather than claim a particular type of eyelet, rigid or flexible, the inventors claimed in their independent claims a knotless surgical device with a generic "eyelet."  Appx610, Appx613.

The PTO issued the '907 patent on November 10, 2015.  Appx559.

## II.    THE BOARD'S DECISION

Arthrex sued Smith & Nephew, Inc. and its subsidiary ArthroCare Corp. for infringing the '907 patent.  Appx3-4.  The jury returned a verdict for Arthrex, finding the patent claims valid and infringed.  *Id.*  The parties then settled the litigation.  *Id.*

While that lawsuit was pending, Smith & Nephew sought inter partes review.  Appx2.  It argued that the PTO's publication of ***the inventors' own 2001 application*** was prior art that anticipated the '907 patent.  Appx18 n.7.  An invention in a later application can benefit from the filing date of an earlier one only if the earlier one provides a written description of the same invention.  35 U.S.C. § 120.  Smith & Nephew argued that the prior applications did not meet that standard.  Appx15-16.

The Patent Trial and Appeal Board agreed.  Though each prior application incorporated by reference the original disclosure of a knotless surgical device with an eyelet, the Board found the applications insufficient to describe the '907 patent's generic eyelet because they also mentioned the advantages of a rigid eyelet over a flexible one. Appx18-22, Appx27-30, Appx40-42.

The Board thus deemed the claims anticipated by the publication of the '280 application.  Appx40, Appx42.

## III.  ARTHREX'S APPEAL TO THIS COURT

Arthrex appealed on several grounds.  First, Arthrex argued that the Board failed to give effect to its applications' incorporations by reference of the original disclosure.  ECF No. 18 at 32-49.  Second, Arthrex urged that the Board erred by failing to find adequate written description:  Every application in the priority chain disclosed Arthrex's invention of a novel device that threads suture through an eyelet to secure tissue without knots, even if the later iterations disclosed an improved version that used a rigid rather than flexible eyelet.  *Id.* at 49-53.  Third, Arthrex contended that the Board improperly invalided its patent claims for lack of written description, when the statute permits inter partes review only for anticipation or obviousness.  *Id.* at 54-59 (citing 35 U.S.C. § 311(b)).  Finally, Arthrex argued that the administrative patent judges who decided its case were appointed in violation of the Appointments Clause.  *Id.* at 59-66.

This Court agreed with Arthrex's constitutional claim without reaching the other three arguments.  *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019).  The Appointments Clause, it explained, requires that principal officers be appointed by the President and confirmed by the Senate; only inferior officers may be appointed by department heads.  *Id.* at 1327 (citing U.S. Const. art. II, § 2).

APJs are appointed by the Secretary of Commerce, a method appropriate only for inferior officers.  *Id.* (citing 35 U.S.C. §6(a)).  But APJs, the Court concluded, exercised the authority of principal officers:  No superior officer could review their decisions, and the Secretary could remove them only for cause.  *Id.* at 1329-34.  As a remedy, the Court severed APJs' tenure protections.  *Id.* at 1335-40.

## IV.    THE SUPREME COURT'S DECISION

The Supreme Court affirmed the finding of a constitutional violation.  "[T]he unreviewable authority wielded by APJs during inter partes review," the Court held, "is incompatible with their appointment by the Secretary to an inferior office." *United States v. Arthrex*, 141 S. Ct. 1970, 1985 (2021).  Only a principal officer "may issue a final decision binding the Executive Branch."  *Id.*

Rather than sever APJs' tenure protections, the Court granted the Director unilateral authority to review APJ decisions.  141 S. Ct. at 1986-88.  The Patent Act generally vests the PTO's "powers and duties," including review powers, in the Director.  35 U.S.C. §3(a)(1).  But Section 6(c) provides that "[o]nly the Patent Trial and Appeal Board may grant rehearings" and that Board panels must consist of "at least 3 members."  *Id.* §6(c).  Because the Director is merely one member of the Board, those provisions precluded him from unilaterally reviewing Board decisions. The Court held that "Section 6(c) cannot constitutionally be enforced to the extent that its requirements prevent the Director from reviewing final decisions rendered

6

by APJs." *Id.* at 1987. "Section 6(c) otherwise remains operative as to the other members of the PTAB." *Id.*

The Supreme Court opined that "a limited remand to the Director provides an adequate opportunity for review by a principal officer." 141 S. Ct. at 1987-88. This Court therefore remanded to the PTO "for the limited purpose of allowing [Arthrex] the opportunity to request Director rehearing." ECF No. 144 at 2. The Court stayed proceedings on the remaining issues on appeal. *Id.*

## V.    PROCEEDINGS ON REMAND

On remand, the PTO was unable to provide the principal-officer review the Supreme Court directed. The office of Director was vacant. So was the office of Deputy Director. The PTO was instead being run by the Commissioner for Patents, Drew Hirshfeld. *See* Ian Lopez, *Hirshfeld Takes Up PTO Chief Duties as Biden Enters White House*, Bloomberg Law, Jan. 20, 2021 (quoting an email from Commissioner Hirshfeld to PTO staff explaining that, "[u]pon a vacancy of the Director and Deputy Director of the USPTO, the Commissioner for Patents performs the functions and duties of the . . . USPTO Director," and that Commissioner Hirshfeld therefore "began performing those functions and duties" upon former Director Andrei Iancu's resignation).

Commissioner Hirshfeld is not a principal officer appointed by the President and confirmed by the Senate. He was appointed by the Secretary of Commerce—a

method appropriate only for *inferior* officers.  35 U.S.C. § 3(b)(2)(A).  Nonetheless, in 2002, the PTO issued an internal order stating:  "If the position of the Under Secretary is vacant, the Deputy Under Secretary will serve as Acting Under Secretary.  If both the Under Secretary and the Deputy Under Secretary positions are vacant, *the Commissioner for Patents . . . will perform the functions and duties of the Under Secretary*."  U.S. Patent & Trademark Off., Agency Organization Order 45-1, § II(D) (June 24, 2002) (reproduced at Add. Ex. C) (emphasis added).[1]

Arthrex filed a petition for Director review of the Board's decision.  Add. Ex. B.  Arthrex disputed Commissioner Hirshfeld's authority to decide the petition, observing that he was "not a presidentially appointed principal officer" and that the absence of principal-officer review raised "serious issues under the Appointments Clause, separation of powers, and the Vacancies Reform Act."  *Id.* at 14-15.

The petition set forth multiple grounds for review.  Principally, Arthrex urged that the Board disregarded the consistent disclosure of the "eyelet" function and the structure for that function throughout the priority chain.  Add. Ex. B at 8-9.  The

---

[1] *See also* U.S. Dep't of Commerce, Department Organizational Order 10-14, § 2.04 (Sept. 28, 2012) (replicating delegation); Teresa Stanek Rea, Deputy Director,  U.S. Patent & Trademark Off., *Delegation To Perform the Non-Exclusive Functions and Duties of the Under Secretary and Deputy Under Secretary of Commerce for Intellectual Property and Director and Deputy Director of the United States Patent Office* (Nov. 15, 2013) (citing both orders); U.S. Patent & Trademark Off., *Notice of Delegation to Commissioner for Patents and Notice of Delegation to Commissioner for Trademarks* (Oct. 30, 2014) (explaining legal basis for delegation).

function of the "first member including eyelet" in the '907 patent claims, Arthrex explained, was to thread suture. *Id.* at 8. The prior applications provided adequate written description for that function so long as "the disclosed function [was] sufficiently correlated to a particular, known structure." *Id.* (quoting *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1332 (Fed. Cir. 2003)).

That test was met here. Each application in the priority chain disclosed the function of threading suture as well as a known structure for threading—initially a flexible eyelet and later also a rigid eyelet. Add. Ex. B at 8. The record was undisputed that both rigid and flexible eyelets existed in the prior art and were known to be interchangeable for the function of threading suture. *Id.* at 9. The Board improperly focused on the "free sliding" advantages of a rigid eyelet, even though the '907 patent claims had nothing to do with free sliding. They only require an eyelet for threading suture, a function performed by both flexible and rigid eyelets. The Board overlooked those dispositive disclosures. *Id.*

Arthrex also renewed its argument that the Board failed to give effect to its incorporations by reference. Add. Ex. B at 10-14. And it reiterated that the Board circumvented the statutory limits on inter partes review. *Id.* at 14.

On October 15, 2021, Commissioner Hirshfeld denied Arthrex's petition. Add. Ex. A. His order states simply: "It is ORDERED that the request for Director

review is denied; and FURTHER ORDERED that the Patent Trial and Appeal Board's Final Written Decision is the final decision of the agency." *Id.* at 1.

## VI.   FURTHER PROCEEDINGS ON APPEAL

Arthrex notified this Court of Commissioner Hirshfeld's decision and filed a supplemental notice of appeal.  ECF Nos. 150, 151.  It requested supplemental briefing and oral argument.  ECF No. 150 at 1.  Because the Appointments Clause dominated the prior oral argument, Arthrex urged that it had not had a full opportunity to argue the remaining points from its original appeal briefs.  *Id.*

This Court lifted the stay of proceedings and ordered the case "rescheduled for oral argument in due course."  ECF No. 152.  The Court permitted Arthrex to file this supplemental brief addressing the denial of review.  ECF No. 156.

## ARGUMENT

The Supreme Court held the inter partes review scheme unconstitutional because it permitted APJs—mere ***inferior*** officers—to render the agency's final word without any review by a principal executive officer.  The Court ordered this case remanded to the PTO so Arthrex could seek principal-officer review.  On remand, however, the agency failed to provide that remedy.  Instead, it denied Arthrex's petition in a decision by yet another person appointed as an ***inferior*** officer:  Commissioner for Patents Drew Hirshfeld.

The agency's delegation of final decisionmaking authority to Commissioner Hirshfeld violates the Appointments Clause.  It also violates the Federal Vacancies Reform Act by purporting to vest principal-officer authority in a subordinate not authorized to serve as Acting Director.  And it violates the separation of powers by allowing an officer to run the agency while insulated from presidential control.  If the Court does not reverse the Board's decision on the merits, it should vacate Commissioner Hirshfeld's decision and remand for proceedings that comply with constitutional and statutory limitations.

## I.    COMMISSIONER HIRSHFELD LACKED AUTHORITY TO REVIEW ARTHREX'S PETITION UNDER THE APPOINTMENTS CLAUSE

Commissioner Hirshfeld's order denying review violated the Appointments Clause.  Commissioner Hirshfeld purported to exercise authority that may only be wielded by a presidentially appointed principal officer.

### A.    Commissioner Hirshfeld Improperly Exercised the Authority of a Principal Officer

The Appointments Clause provides that principal officers must be appointed by the President and confirmed by the Senate.  U.S. Const. art. II, § 2.  Only inferior officers may be appointed by department heads.  *Id.*  Commissioner Hirshfeld was appointed by the Secretary of Commerce.  35 U.S.C. § 3(b)(2)(A).  Under the Appointments Clause, therefore, he could exercise only the powers of an inferior

11

officer—authority that does not include rendering an agency's final decisions with no opportunity for review by any superior executive officer.

The Supreme Court made clear in this very case that only a ***principal*** officer may issue final agency decisions that are not subject to review by any superior officer. The Court held the inter partes review scheme unconstitutional because it gave ***inferior*** officers the last word: "[T]he unreviewable authority wielded by APJs during inter partes review," the Court held, "is incompatible with their appointment by the Secretary to an inferior office." *Arthrex*, 141 S. Ct. at 1985. "Only an officer properly appointed to a principal office may issue a final decision binding the Executive Branch . . . ." *Id.*; *see also Edmond v. United States*, 520 U.S. 651, 665 (1997) (holding that Coast Guard judges were inferior officers because they had "no power to render a final decision on behalf of the United States unless permitted to do so by other Executive officers").

The Appointments Clause, the Court explained, ensures accountability for executive actions. "The President is 'responsible for the actions of the Executive Branch . . . .'" *Arthrex*, 141 S. Ct. at 1978. "Assigning the nomination power to the President guarantees accountability for the appointees' actions because the 'blame of a bad nomination would fall upon the president singly and absolutely.'" *Id.* at 1979 (quoting *The Federalist No. 77* (Hamilton)). "[T]he Appointments Clause permits Congress to dispense with joint appointment, but ***only*** for inferior officers."

12

*Id.* (emphasis added). Congress's attempt to grant final authority to APJs, subject to no review by superior officers, "conflict[ed] with the design of the Appointments Clause 'to preserve political accountability.'" *Id.* at 1982.

To remedy the violation, the Court severed the statutory restrictions that prevented the Director from unilaterally reviewing APJ decisions. *Arthrex*, 141 S. Ct. at 1987. The Court then remanded so Arthrex could seek ***principal-officer*** review: "[A] limited remand to the Director," the Court held, "provides an adequate opportunity for ***review by a principal officer***." *Id.* at 1987-88 (emphasis added).

By assigning Arthrex's petition to Commissioner Hirshfeld, the PTO once again denied Arthrex the constitutionally required opportunity for principal-officer review. Just like the panel of APJs who previously invalidated Arthrex's patent claims, Commissioner Hirshfeld is an inferior officer appointed by the Secretary of Commerce. 35 U.S.C. § 3(b)(2)(A). Just like those APJs, he purports to issue final decisions that are not reviewable by any superior officer. The Court found the old regime unconstitutional because, "[i]n all the ways that matter to the parties who appear before the PTAB, the buck stops with the APJs, not with the Secretary or Director." *Arthrex*, 141 S. Ct. at 1982. Now, the buck stops with Commissioner Hirshfeld. His exercise of that principal-officer power "conflicts with the design of the Appointments Clause 'to preserve political accountability.'" *Id.*

**B.    The PTO's Delegation of Authority Does Not Avoid the Appointments Clause Violation**

The PTO cannot avoid the Supreme Court's holding on the theory that Commissioner Hirshfeld exercises only authority delegated by the PTO's Director. *See* pp. 7-8 & n.1, *supra*.   Ordinarily, a principal officer may delegate tasks to a subordinate without running afoul of the Appointments Clause.   The Framers expected the Executive Branch to "rely on subordinate officers for assistance." *Arthrex*, 141 S. Ct. at 1979.   That arrangement, however, derives its "legitimacy and accountability" from a "clear and effective chain of command."  *Id.*   The principal officer "need not review every decision."  *Id.* at 1988.   But he must have "***discretion*** to review decisions rendered."  *Id.* (emphasis added).

Thus, where a principal officer delegates decisionmaking authority to a subordinate but retains the power to review the decisions or to revoke the delegation, the subordinate remains an inferior officer.  *See In re Sealed Case*, 829 F.2d 50, 56 (D.C. Cir. 1987) (holding that Iran/Contra independent counsel was an inferior officer because "the Attorney General may rescind th[e] regulation [creating the office] at any time"); *e.g.*, 85 Fed. Reg. 13,186, 13,188 (Mar. 6, 2020) (providing for Secretary of Labor review of Administrative Review Board decisions where Secretary had previously delegated final authority to the Board).  The principal officer's continuing power to supervise or revoke the delegation preserves the accountability the Appointments Clause requires.

14

Here, the delegation has no such effect. The offices of Director and Deputy Director are both vacant. As a result, no superior officer at the PTO can review Commissioner Hirshfeld's decisions or rescind his authority in the event he abuses or neglects his powers. It makes no difference whether Commissioner Hirshfeld has the agency's last word because Congress gave him that power directly or because his superior handed him a blank check before packing up and shipping out. Either way, the buck now stops with Commissioner Hirshfeld. "Only an officer properly appointed to a principal office may issue a final decision binding the Executive Branch . . . ." *Arthrex*, 141 S. Ct. at 1985. Commissioner Hirshfeld exercises that authority but was never appointed as the Constitution requires.

Nor can the PTO avoid the Supreme Court's decision by analogizing Commissioner Hirshfeld to the acting officers in cases like *United States v. Eaton*, 169 U.S. 331 (1898). *Eaton* addressed whether "[C]ongress [could] vest ***in the president*** the appointment of a subordinate officer called a 'vice consul,' to be charged with the duty of temporarily performing the functions of the consular office." *Id.* at 343 (emphasis added). The Court held that Congress could do so because a "subordinate officer . . . charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, . . . is not thereby transformed into the superior and permanent official." *Id.*

15

*Eaton* thus governs situations where Congress authorizes the ***President*** to appoint a temporary acting officer. 169 U.S. at 343 (addressing whether Congress could "vest in the president" power to appoint acting officer); *see also NLRB v. SW Gen.*, 137 S. Ct. 929, 935 (2017) ("Since President Washington's first term, Congress has given ***the President*** limited authority to appoint acting officials to temporarily perform the functions of a vacant [principal] office without first obtaining Senate approval." (emphasis added)). Those arrangements preserve the President's oversight by placing appointments squarely in his hands.

Here, by contrast, the President never appointed Commissioner Hirshfeld as Acting Director. The PTO came up with the delegation of authority all on its own. Nothing in *Eaton* authorizes an agency to exempt its leadership from presidential nomination and Senate confirmation by delegating the agency head's duties and functions to the agency's preferred successor.

Commissioner Hirshfeld, moreover, is hardly performing the Director's duties "for a limited time, and under special and temporary conditions." *Eaton*, 169 U.S. at 343. Under the agency's delegation, Commissioner Hirshfeld serves indefinitely until a successor is appointed, and he has already discharged the powers of Director for nearly a year. *See* pp. 7-8, *supra*; *cf. SW Gen.*, 137 S. Ct at 946 n.1 (Thomas, J., concurring) (finding "nothing 'special and temporary' about [an officer's] appointment" where officer "served for more than three years in an office limited by

statute to a 4-year term"); *United States v. Smith*, 962 F.3d 755, 764 n.3 (4th Cir. 2020) (noting that "a statute may authorize an acting tenure so lengthy that it exceeds the 'special and temporary conditions' contemplated by *Eaton*"); *Designating an Acting Attorney General*, 2018 WL 6131923, at *14 (O.L.C. Nov. 14, 2018) (acting appointment must not "continue beyond a reasonable time").

Finally, the PTO cannot rely on the Supreme Court's one passing reference to "a remand to the ***Acting*** Director to decide whether to rehear the petition." *Arthrex*, 141 S. Ct. at 1972 (emphasis added). By the PTO's own admission, a Commissioner for Patents exercising the powers of Director is not an "Acting Director" at all. *See* U.S. Patent & Trademark Off., *Notice of Delegation to Commissioner for Patents and Notice of Delegation to Commissioner for Trademarks* (Oct. 30, 2014) (Commissioner "has not been, and need not be, appointed 'Acting Director' of the USPTO under the Vacancies Reform Act"). The parties, moreover, did not brief in the Supreme Court whether Commissioner Hirshfeld could exercise the powers of Director. The Court's opinion does not resolve that issue. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

The law is clear: The PTO cannot revoke Arthrex's patent claims through a final and unreviewable decision by a panel of APJs. It cannot do the same thing

through a decision of its Commissioner for Patents, who is likewise appointed as a mere inferior officer. Only a principal officer appointed by the President and confirmed by the Senate can wield those powers.

## II. COMMISSIONER HIRSHFELD LACKED AUTHORITY TO REVIEW ARTHREX'S PETITION UNDER THE FEDERAL VACANCIES REFORM ACT

The Federal Vacancies Reform Act ("FVRA") restricts the circumstances in which a subordinate can temporarily exercise the powers of a vacant principal office. It thereby prevents agencies from evading the constitutional requirements for appointment of principal officers. Commissioner Hirshfeld's denial of Arthrex's petition violated those statutory limitations too.

### A. Commissioner Hirshfeld Was Not Appointed Pursuant to the Federal Vacancies Reform Act

The FVRA sets forth "the *exclusive* means for temporarily authorizing an acting official to perform the functions and duties" of a vacant principal office. 5 U.S.C. §3347(a) (emphasis added). If a principal officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office," those functions and duties shall be performed by (1) the "first assistant to the office"; (2) another principal officer, if the President so directs; or (3) another high-level officer or employee in the same agency, if the President so directs. *Id.* §3345(a)(1)-(3). The statute defines "function or duty," in relevant part, as a function or duty that is "established by statute" and "required by statute to be performed by the applicable

18

officer (and only that officer)." *Id.* §3348(a)(2)(A). Actions taken in violation of the FVRA "shall have no force or effect." *Id.* §3348(d).

Congress enacted the FVRA to help enforce the constitutional requirements of presidential nomination and Senate confirmation for principal officers, "a critical 'structural safeguard . . . of the constitutional scheme.'" *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017). The statute followed years of attempts to evade those requirements through the prolific use of "acting" appointments. *Id.* at 935-37.

Consistent with that design, courts have rejected attempts to evade the FVRA through regulatory delegations. For example, in *Bullock v. U.S. Bureau of Land Management*, 489 F. Supp. 3d 1112 (D. Mont. Sept. 25, 2020), *injunctions vacated as moot*, No. 4:20-cv-00062, Dkt. 52 (D. Mont. Nov. 1, 2021), the court rejected an attempt to delegate the Director of the Bureau of Land Management's authority to a subordinate during a vacancy. *Id.* at 1124-30. The delegations, the court held, "represent[ed] unlawful attempts to avoid the constitutional requirements of the Appointments Clause and the statutory requirements of the FVRA." *Id.* at 1127; *see also L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 29-34 (D.D.C. 2020) (rejecting argument that "mere existence of [a] vesting-and-delegation statute[]" negated FVRA's requirements), *appeal dismissed*, No. 20-5141, 2020 WL 5358686 (D.C.

19

Cir. Aug. 25, 2020). The practice of evading the FVRA through regulatory delegations has been the subject of extensive scholarly criticism as well.[2]

The PTO's delegation of authority to Commissioner Hirshfeld is no different. Commissioner Hirshfeld does not qualify as an Acting Director under the FVRA. He is not the "first assistant" to the Director—the Deputy Director has that job. 5 U.S.C. § 3345(a)(1); 35 U.S.C. § 3(b)(1). He is not a principal officer. 5 U.S.C. § 3345(a)(2). And the President did not personally select him to assume the Director's duties. *Id.* § 3345(a)(3). Commissioner Hirshfeld therefore cannot serve as Acting Director consistent with the FVRA.

### B.    Commissioner Hirshfeld Purported To Perform Functions and Duties of the Director

The PTO has nonetheless asserted that the FVRA does not apply when the Commissioner for Patents stands in for the Director, because the Commissioner is not actually performing any "function or duty" of the Director. The statute defines

---

[2] *See* Nina A. Mendelson, *The Permissibility of Acting Officials: May the President Work Around Senate Confirmation?*, 72 Admin. L. Rev. 533, 558-63 (2020) (arguing that FVRA was intended to "eliminate agency use of internal delegation to avoid Vacancies Act limits on acting appointments"); Nina A. Mendelson, L.M.-M. v. Cuccinelli *and the Illegality of Delegating Around Vacant Senate-Confirmed Offices*, Yale J. on Reg.: Notice & Comment (Mar. 5, 2020) (citing "widespread" strategy of "delegat[ing] around a vacancy in a Senate-confirmed post, allotting the full suite of responsibilities to an unconfirmed individual, someone typically ineligible to 'act' under the FVRA's qualifications"); Jody Freeman & Sharon Jacobs, *Structural Deregulation*, 135 Harv. L. Rev. 585, 647 (2021) ("Presidents have tried to circumvent the [FVRA's] limitations by having agency heads delegate responsibilities to subordinates before vacating their offices.").

"function or duty" to include only actions "required . . . to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2)(A). According to the PTO, "*[a]ll* of the Director's duties under Titles 35 and 15 . . . are delegable (*i.e.*, non-exclusive)" because there is no "clear statutory language" saying otherwise. U.S. Patent & Trademark Off., *Notice of Delegation to Commissioner for Patents and Notice of Delegation to Commissioner for Trademarks* (Oct. 30, 2014) (emphasis added). Thus, even though Commissioner Hirshfeld has been single-handedly running the agency for almost a year, the PTO claims he is not exercising any "function or duty" of the Director at all. *See id.* (asserting that Commissioner "need not be[ ] appointed 'Acting Director' of the USPTO" because "[a]ppointment of a VRA-authorized 'Acting Officer' is only needed to allow an individual to perform duties . . . that are exclusive to [a] particular [principal] Officer").

That argument defies the FVRA's basic structure. Agency organic statutes routinely authorize agency heads to delegate their duties. *See L.M.-M.*, 442 F. Supp. 3d at 34 (statutes "pervasive"). Treating an agency head's generic delegation authority as sufficient to exempt the officer's entire panoply of powers from the FVRA renders the statute's careful limits meaningless in the vast majority of cases. *See* pp. 19-20 & n.2, *supra*.

In any case, whatever the merits of the PTO's counterintuitive theory as to *other* actions Commissioner Hirshfeld might take, the theory falls flat here. The

Director's unilateral power to review Board decisions *is* an exclusive, non-delegable

function.  The Supreme Court made that clear in this case already.

The Supreme Court observed that the Patent Act's vesting of the PTO's

"powers and duties" in the Director would ordinarily authorize him to review APJ

decisions.  *Arthrex*, 141 S. Ct. at 1986 (citing 35 U.S.C. § 3(a)(1)).  That review

power, however, was hedged by the statute's mandate that "only the [Board] may

grant rehearings" and that the Board must sit in panels of "at least 3 members."  *Id.*

at 1986-87 (citing 35 U.S.C. § 6(c)).  To remedy the constitutional violation, the

Court severed those latter restrictions, but *only* as applied to the Director:  "Section

6(c) cannot constitutionally be enforced to the extent that its requirements prevent

***the Director*** from reviewing final decisions rendered by APJs. . . .  The ***Director***

accordingly may review final PTAB decisions . . . ."  *Id.* at 1987 (emphasis added).

"Section 6(c) otherwise remains operative ***as to the other members of the PTAB***."

*Id.* (emphasis added).

After the Supreme Court's decision, the Patent Act permits the Director—and

only the Director—to exercise a unilateral power to review Board decisions.  The

Director cannot delegate that unilateral power to other PTO officers because

"Section 6(c) otherwise remains operative" as to those other officers—they are

***statutorily prohibited*** from unilaterally reviewing Board decisions.  *Arthrex*, 141 S.

Ct. at 1987.  The Director's unilateral power to review Board decisions is therefore

a power "established by statute" and "required by statute to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2)(A). It is a "function or duty" within the meaning of the FVRA. *Id.* Consequently, even apart from constitutional constraints, the FVRA deprives Commissioner Hirshfeld's decision of any "force or effect." *Id.* § 3348(d)(1).

## III.   COMMISSIONER HIRSHFELD'S EXERCISE OF THE DIRECTOR'S AUTHORITY VIOLATES THE SEPARATION OF POWERS

The PTO's attempt to install Commissioner Hirshfeld as head of the agency creates yet another constitutional problem. Article II of the Constitution vests the "executive Power" in the President and directs him to "take Care that the Laws be faithfully executed." U.S. Const. art. II, §§ 1, 3. Those provisions require that the President have broad power to remove heads of executive agencies. Commissioner Hirshfeld now runs a major federal agency that wields vast executive powers, setting policy and administering operations that affect billions of dollars of intellectual property. But unlike a presidentially appointed Director, who is removable at will, 35 U.S.C. § 3(a)(4), Commissioner Hirshfeld "may be removed from office" only for "misconduct or nonsatisfactory performance under [his] performance agreement," *id.* § 3(b)(2)(C). Those restrictions violate the separation of powers by impeding the President's ability to supervise Commissioner Hirshfeld's discharge of the Director's executive duties.

23

In *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), the Supreme Court invalidated a provision prohibiting the President from removing the Director of the Consumer Financial Protection Bureau except for "inefficiency, neglect of duty, or malfeasance in office." *Id.* at 2193, 2197-207. The President's duty to ensure due execution of the laws, the Court held, "generally includes the ability to remove executive officials, for it is 'only the authority that can remove' such officials that they 'must fear and, in the performance of [their] functions, obey.'" *Id.* at 2197. The removal restrictions impeded the President's ability to supervise the Director's executive functions. *Id.* at 2200-07.

Similarly, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Court held unconstitutional a statute that prohibited the President from removing the Director of the Federal Housing Finance Agency except "for cause." *Id.* at 1771. "[T]he Constitution," the Court held, "prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer." *Id.* at 1787; *see also Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492-98 (2010) (holding that dual for-cause restrictions on President's authority to remove PCAOB members violated separation of powers).

Those same principles apply here. Commissioner Hirshfeld heads a major federal executive agency. He wields all the "powers and duties of the United States Patent and Trademark Office." 35 U.S.C. § 3(a)(1). He is "responsible for providing

policy direction and management supervision." *Id.* § 3(a)(2).  He may issue binding regulations.  35 U.S.C. § 2(b)(2).  He has "sole authority over the decision whether to grant [a] requested patent."  U.S. Supp. Br. in *In re Boloro Glob. Ltd.*, No. 19-2349, Dkt. 27, at 3, 7-9 (Fed. Cir. filed Mar. 20, 2020).  After the Supreme Court's decision in this case, he may unilaterally "review final PTAB decisions and . . . issue decisions himself."  *Arthrex*, 141 S. Ct. at 1987.  He has even promulgated rules governing his exercise of that review power.  *See* U.S. Patent & Trademark Off., *USPTO Implementation of an Interim Director Review Process Following Arthrex* (June 29, 2021).  *Seila Law* and *Collins* require that he be removable at will.

The Court has recognized only two exceptions to the President's authority to remove executive officers.  Neither applies here.  First, Congress may grant tenure protections to "***multimember*** expert agencies that do not wield substantial executive power."  *Seila Law*, 140 S. Ct. at 2198-20 (emphasis added).  That exception plainly does not apply.  Commissioner Hirshfeld is the ***sole*** head of an agency with broad executive powers.

Second, the Court has permitted Congress to provide tenure protections to "inferior officers with limited duties and no policymaking or administrative authority."  *Seila Law*, 140 S. Ct. at 2199-2200.  Commissioner Hirshfeld is currently exercising the powers of a ***principal*** officer.  *See* pp. 11-18, *supra*.  But even if he were only an inferior officer, he could not remotely be described as an "inferior

officer[] ***with limited duties and no policymaking or administrative authority***." *Seila Law*, 140 S. Ct. at 2199-2200 (emphasis added).  So long as he stands in for the Director, he has vast policymaking and managerial authority over an entire federal agency.  *See* pp. 24-25, *supra*.  That he allegedly exercises those powers only on an interim basis does not reduce their scope or diminish the need for presidential oversight.  *Cf. Collins*, 141 S. Ct. at 1781 (construing statute not to restrict President's authority to remove Acting Director of FHFA).

The separation of powers requires that someone with Commissioner Hirshfeld's current level of authority be removable at will.  For that reason too, Commissioner Hirshfeld lacked authority to deny Arthrex's petition.

# CONCLUSION

For the foregoing reasons, as well as those in Arthrex's principal briefs, the Court should reverse the Board's decision on the merits and vacate Commissioner Hirshfeld's denial of review.

Respectfully submitted,

CARLSON, GASKEY & OLDS, P.C.

Dated: January 12, 2022

/s/ Anthony P. Cho
Anthony P. Cho
400 West Maple Road, Suite 350
Birmingham, MI 48009
Telephone: (248) 988-8360

Jeffrey A. Lamken
Robert K. Kry
MOLOLAMKEN LLP
600 New Hampshire Ave. NW
Washington, D.C.
Telephone: (202) 556-2010
Facsimile: (202) 556-2001
jlamken@molomanken.com
rkry@mololamken.com

Jordan A. Rice
MOLOLAMKEN LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 450-6709
jrice@mololamken.com

*Attorneys for Appellant Arthrex, Inc.*

## CERTIFICATE OF COMPLIANCE

I, Anthony P. Cho, counsel for Appellant, certify that the foregoing Corrected Supplemental Brief complies with the type-volume limitation set forth in the Court's Order, ECF No. 156.

Specifically, this brief contains 5,987 words (excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2)) as determined by the word count feature of the word processing program used to create this brief.

I further certify that the foregoing brief complies with the typeface requirements set forth in Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). Specifically, this brief has been prepared using a proportionally spaced typeface using Microsoft Word 2019, in 14-point Times New Roman font.

Dated: January 12, 2022          /s/ Anthony P. Cho
                                 Anthony P. Cho
                                 CARLSON, GASKEY & OLDS, P.C.

                                 *Attorneys for Appellant, Arthrex, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2022, I electronically filed the foregoing document using the Court's CM/ECF system, which sent notification of such filing to all counsel of record as follows:

Charles T. Steenburg
Michael N. Rader
Nathan R. Speed
Richard F. Giunta
Turhan F. Sarwar
Wolf Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210

Mark A. Perry
Gibson, Dunn & Crutcher LLC
1050 Connecticut Avenue, NW
Washington, DC 20036

Mark J. Gorman
Smith & Nephew, Inc.
7135 Goodlett Farms Parkway
Cordova, TN 38013

Joshua M. Salzman
Katherine Twomey Allen
Scott R. McIntosh
Courtney Dixon
Joseph H. Hunt
Department of Justice, Civil Division

Thomas W. Krause, Solicitor
Farheena Y. Rasheed, Deputy Solicitor
Sarah E. Craven, Associate Solicitor
Molly R. Silfen, Associate Solicitor
Daniel Kazhdan
United States Patent and Trademark Office

Charles R. Macedo
David P. Goldberg
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016

Robert Joseph Rando, Esq.
The Rando Law Firm P.C.
6800 Jericho Turnpike, Suite 120W
Syosset, NY 11791

Ksenia Takhistova
Hunton Andrews Kurth LLP
200 Park Avenue
New York, NY 10166

Matthew S. Hellman
Yusuf Esat
Jenner & Block LLP
353 North Clark Street
Chicago, IL 60654

Jeffrey Francer
The Association for Accessible Medicines
Suite 850 601 New Jersey Avenue, NW
Washington, DC 20001

Dated: January 11, 2022                    /s/ Jessica Fleetham
                                           Jessica Fleetham